UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------˄-----------x
MICHAEL REEVES,

                              Plaintiff,              **AMENDED COMPLAINT**

            -against-
                                           Jury
                       Trial   Yes [X] No [ ]

UNITED STATES DEPARTMENT OF JUSTICE,    Docket#: 1:25-CV-3405- LTS
THE DEPARTMENT OF HOMELAND SECURITY,
NATIONAL SECURITY AGENCY AND
U. S IMMIGRATION AND CUSTOMS
ENFORCEMENT

                              Defendants

-----------------------------x

           EMOTIONAL DISTRESS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
           AND NEGLIGENT INFLICTION OF EMPTIONAL DISTRESS

### <u>COMPLAINT FOR P E R S O N A L  INJURY, DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT, WARRANTLESS SEARCH AND SEIZURE, REDRESS,</u> EXCESSIVE NOISE/ NUISANCE

Plaintiff, Michael Reeves ("Plaintiff' or "Mr. Reeves") PRO SE, for his Complaint against the

Defendants, UNITED STATES DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF

HOMELAND SECURITY, THE NATIONAL SECURITY AGENCY,

states as follows:

## STATEMENT OF THE CASE

1.    On January 23, 2025, without good cause or any valid basis, the above defendants  injured
Mr. Michael Reeves, an innocent man, as they chased him down interstate 95 south, and shot him
with low frequency  sounds, injuring his eyes and ears in plain public view.

2.      During the cour s e of this extremely intrusive and pervasive surveillance flight, vehicle video cameras captured and recorded the respondents directing excessive and unnecessary n o i s e a n d a b e a m o f l i g h t at the vehicle that Mr. Reeves was operating, thereby causing distress and i n j u r y of Mr. Reeve's ears, including, but not limited to, ringing, pinging noises, and discomfort. This injury required me dications, as w e ll as subsequen t a n d ongoing medica l c are. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffe red injuries, including, but not limited to, sharp ringing noise in his ears, discharge of fluid, emotional distress, extreme anxiety, depression, insomnia, and nightmares".

3.      On January 29, 2025, at approximately 11:45 PM, the defendants engaged in a series of harassing, intimidating, and threatening behaviors towards the plaintiff by using drones, creating a climate of fear and terror that constitutes extreme and outrageous conduct. Consequently, Mr. Reeves experienced extreme paranoia, with other persistent symptoms including, but not limited to, ringing in his ears, nosebleeds, and watery eyes, which continue to affect him. The actions of the respondents demonstrated a blatant disregard for the safety of Mr. Reeves and other motorists on the highway at that time. The defendants were aware, or should have been aware, of the potential consequences of their tortious actions and the associated risks of harm to Mr. Reeves and other travelers. Mr. Reeves could have veered off the highway or collided with another vehicle, endangering innocent bystanders. As a direct result of the defendants' extreme and outrageous conduct, the plaintiff has endured significant emotional distress, which includes, but is not limited to, severe headache, anxiety, depression, insomnia, loss of appetite and very frightening nightmares.

4.      On April 24, 2025, Mr. Reeves experienced significant emotional distress when defendants repeatedly flew a drone over his office, hovering above it each time extremely loudly and reeving up their jet engines. The event which left him feeling terrified and bewildered about going to work. It took away his passion for being at his own office. This incident was particularly distressing as the drone had tracked him from his home, where it had been circling for several hours prior. Defendants acted with the intent of causing emotional distress to Plaintiff, or, in the alternative, acted with reckless disregard for the probability of causing emotional distress. As a result of this incident, the plaintiff suffered emotional distress.

5.      On May 1, 2025, Mr. Reeves sustained injuries from a helicopter or drone operated by the defendants encounter and intimidated the plaintiff by flying lowly overhead and emanating audios from overhead, all on camera, while Reeves was driving on Interstate I-840 in Greensboro, NC. The aircraft hovered dangerously close to his vehicle, blending in with the surrounding   traffic, which suggested to others that he was being monitored or followed. This incident was not only Humiliating and degrading, but also severely impacted his reputation.

6.        Consequently, it has led to a significant decline in his quality of life and intensified his chronic PTSD to unprecedented levels of distress. The defendants were fully aware of the frightening implications of this event yet chose to disregard the potential risks it posed to Mr. Reeves and other innocent drivers, thereby exhibiting a blatant disregard for his life and safety. Mr. Reeves was injured as a direct result of this incident. Reeves claims that he suffered emotional distress due to this event. Defendants, without provocation, engaged this pattern of harassment, intimidation, and threats towards Plaintiff, creating an environment of fear and terror, which constitutes extreme and outrageous conduct.

7.        On May 3, 2025, at approximately 1:06 a.m., Mr. Reeves encountered a disturbing event. A drone or helicopter, operated by the defendants, while conducting surveillance above his home circled his residence over 17 times, intentionally producing a loud noise that rattled his home. The volume was so significant that it could likely be heard from a mile away.

8.        This experience has resulted in persistent emotional turmoil, leaving the plaintiff feeling despondent and disoriented. Regrettably, the situation has deteriorated over time. In response to these mental health issues, the plaintiff is now seeking counseling for assistance. Several people spoke to the plaintiff the following day that noticed the assault on his home. Plaintiff did not only suffer emotional distress, this act violated his privacy and defamed him. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

5.        On December 25, 2024, Mr. Reeves injured his right thumb when he slipped and fell as he was trying to escape from multiple satellites or drones. Defendants negligently operated their aerial vehicles, causing a situation that resulted in Plaintiff's physical injury and emotional distress. This was Christmas. In a day when numerous individuals were engaged in festive celebrations, the plaintiff was subjected to surveillance and harassment by low-flying drones. For more than six hours, the plaintiff was pursued by these drones, which assaulted him with frigid air from above, leaving him in a state of fear and trembling. This incident caused the plaintiff significant emotional harm, resulting in persistent nightmares and flashbacks. Additionally, he experienced property damage and emotional distress.

6.        On May 5, 2025, at 9:19 PM, Mr. Reeves was recklessly placed in a dangerous situation, resulting in significant emotional distress and suffering at 3508 Oneida Road, Greensboro, NC. This occurred when the defendants operated a surveillance helicopter at a low altitude above him, in a manner, presumably to intimidate and scare him, while he was driving on the highway. In a state of fear, he pulled over and exited his vehicle, only to be followed closely by a second helicopter flying at a similarly low altitude. The experience left him in a state of fear and distress, leading to ongoing trauma characterized by flashbacks and nightmares related to this harrowing event. This incident caused Mr. Reeves severe emotional distress. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

7.      On February 14, 2024, the Defendant, acting without provocation, engaged in a systematic campaign of harassment, intimidation, and threats against the Plaintiff using drones or helicopter and humans, thereby fostering an atmosphere of fear and terror. This behavior, which involved the simultaneous use of drones and individuals on foot, constitutes conduct that is both extreme and outrageous. The Plaintiff's right to privacy was infringed upon, as he was subjected to name-calling and relentless harassment. Drones followed him wherever he went, hovering over the area until he left. As a direct consequence of the Defendant's extreme and outrageous actions, the Plaintiff experienced significant emotional distress, which included, but was not limited to, severe anxiety, depression, insomnia, and nightmares.

8.      On September 17, 2024, the plaintiff sustained injuries from a low-flying drone that was reportedly capturing images of him. The drone produced a significant noise and hovered above him three times for several seconds, instilling fear in him as he believed his life was in danger. This event resulted in Mr. Reeves experiencing profound emotional distress. Consequently, due to the defendant's egregious and unacceptable behavior, the plaintiff endured considerable emotional turmoil, which included, but was not limited to, severe anxiety, depression, insomnia, and recurring nightmares.

9.      On September 9, 2024, the plaintiff was assaulted during a surveillance from the fear that the low flying aircraft cause after it circled him several times and when he boarded a train, the drone was about to track him to his train subway exit and continue to stalk and harass and violate his privacy after he got off the train. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares".

10.      On August 6, 2024, the plaintiff was assaulted by a drone flying lowly and taking photographs of him, he was frightened. Defendant acted with the intent of causing emotional distress to Plaintiff, or, in the alternative, acted with reckless disregard for the probability of causing emotional distress    As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares".

11.      On July 3, 2024, the plaintiff was assaulted during drone or helicopter surveillance. Plaintiff privacy was violated when defendants distributed malicious information throughout his community smearing his image and a campaign to get people to either harm or stalk and harass him. During this encounter, the defendants encounter 3 individuals who told the plaintiff about the ongoing propaganda. . As a direct result of Defendant's extreme and outrageous conduct, Plaintiff's character was defamed. He suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares".

12.      On March 27, 2024, plaintiff was injured after several months of being assaulted with a taser when the defendants used a taser to tase him from the above apartment for several months that had started back around in early 2023. Defendant's negligent and tortious actions, as described

above, created a foreseeable risk of causing severe physical harm and emotional distress to Plaintiff, who was within his home - the zone of danger". Defendant acted with the intent of causing emotional distress to Plaintiff, or, in the alternative, acted with reckless disregard for the probability of causing emotional distress. The above and all the foregoing acts against the plaintiff's emotional distress was a direct and proximate result of the Defendant's negligence.

13.        On March 15, 2025, the plaintiff was subjected to an assault amidst an aerial attack and the overwhelming noise generated by drones. This extended exposure to the intense drone noise has resulted in noise-induced hearing loss and other auditory issues. The plaintiff is currently facing challenges with hearing after being repeatedly ambushed by drones for over a year. Additionally, the plaintiff has endured considerable emotional distress, which encompasses, but is not confined to, severe anxiety, depression, insomnia, and recurring nightmares.

14.        On or around February 6, 2021, the plaintiff sustained injuries when he first discovered that his name was added to the terrorist watch list. Consequently, Mr. Reeves has faced torture, organized and community stalking and assaults, property damage, financial loss, -- all resulting in the loss of his home and business, leaving him penniless and homeless. He has been subjected to continuous verbal harassment by individuals (agents) who follow him at all hours. Each morning, shortly after he awakens, a vehicle passes by his residence, honking its horn before quickly departing. The program has employed individuals with dubious criminal backgrounds to stalk and intimidate him. Furthermore, it has utilized the local community policing initiative in his neighborhood to facilitate neighborhood-based surveillance. While traveling, he is confronted by organized teams of agents and drones overhead, which presumably relay real-time intelligence to those on the ground. The ground team actively participates in tarnishing his reputation as he goes about his daily activities, trailing him and disseminating harmful information. The defendant has unlawfully conducted warrantless searches and seizures to obtain his personal information, infringing upon his privacy. As a direct consequence of the defendant's egregious and outrageous actions, the plaintiff has endured significant        emotional distress, including, but not limited to, severe anxiety, depression, insomnia, and nightmares.

15.        On April 6, 2024, a drone hovered above the plaintiff's bedroom while he attempted to fall asleep, causing him to visibly tremble. Throughout the night, more than ten drones were present around his residence. This persistent surveillance by law enforcement drones over the plaintiff's home constitutes an act that has led to defamation of character. Observers may develop a negative perception of the plaintiff, who has committed no wrongdoing. The experience was profoundly distressing. As a direct result of the defendant's reprehensible and outrageous conduct, the plaintiff has suffered considerable emotional turmoil, which includes, but is not limited to, severe anxiety, depression, insomnia, and nightmares.

16.        On June 4, 2023, an unsettling and distressing event unfolded for Mr. Reeves, whose privacy and personal safety were gravely compromised by relentless drone harassment. While simply trying to enjoy his birthday, he was persistently ambushed by a drone that flew exceedingly low overhead, relentlessly following him from Walgreens, to a restaurant, the laundromat, mechanic shop, corner store and finally back home. This wasn't just an invasion of privacy; it was a complete obliteration of a special day meant for joy and celebration.

17.      To compound the distress, as Mr. Reeves was involuntarily accompanied by the drone, incessant stomping and kicking on the floor above him added to his sense of enclosure and torment within his own apartment. This daily invasion of both airspace and personal space left him unable to relish simple pleasures such as a peaceful dinner, adversely affecting his mental and emotional well-being.  The ordeal did not stop at privacy invasion. Mr. Reeves also began experiencing alarming physical symptoms, including a burning and tingling sensation in his belly and intimate areas. Upon inspection, he discovered heavy scarring and what appeared to be burn marks on his inner thighs and private areas. These unexplained ailments intensified with extreme swelling in his testicular region, which has yet to subside.

18.      Mr. Reeves asserts that he has suffered injuries due to an unlawful constraint imposed by excessively intrusive surveillance, which has deprived him of his freedom for over 450 days. This situation has effectively limited his freedom of association and personal autonomy, violating his privacy rights and the Fourth Amendment. The defendants, lacking adequate probable cause, have participated in a continuous pattern of harassment, intimidation, and threats against the plaintiff, fostering an atmosphere of fear and terror that amounts to extreme and outrageous behavior, resulting in his emotional distress. As a direct consequence of the defendant's egregious and outrageous actions, the plaintiff has endured significant emotional distress, including, but not limited to, severe anxiety, depression, insomnia, and nightmares.

19.      Mr. Reeves asserts that he has been wrongfully detained and harmed by an overly invasive surveillance program, where the defendants have committed intentional torts by unlawfully restricting his freedom of movement against his will, without any legal basis. This has led to the development of a mental disorder, causing him to fear going outside, engaging with others, and ultimately depriving him of a fulfilling life and the capacity to form meaningful relationships.

20.      Furthermore, the plaintiff alleges that he lost his ability to achieve an erection around May 2024, following repeated assaults with an unidentified device by individuals in the employ of the respondents, who while committing these acts would mock him by suggesting he would never regain his sexual function, and ridiculed him regarding the diminished size of his male organ. He would experience extreme burns on his male organ.

21.      For more than two years, the defendants have subjected the plaintiff to physical assaults on his genitalia, accompanied by derogatory comments and taunts regarding his sexual prowess, including references to his reduced size. The defendants allegedly employed an unidentified device to inflict harm on his penis, causing it to shrink dramatically, and subsequently resulting in impotence. Mr. Reeves asserts that he has suffered considerable injuries to his penis due to the

repeated application of this unknown device, which appears to have been designed to cause torture. As a direct result of the defendants' reprehensible actions, the plaintiff has experienced significant physical harm, including severe scarring and shrinkage of the penis, impotence, emotional distress, anxiety, depression, insomnia, and recurring nightmares.

22.      Mr. Reeves asserts that he experienced a slip and fall incident on May 5, 2025, at around 10:06 PM, resulting in injury while attempting to photograph drones pursuing him over the interstate highway, during which he stumbled over an object and sustained a fracture to his right thumb. Mr. Reeves has experienced swelling and extreme pain. His thump looks deformed. He has been unable to seek medical attention due to fear of being outdoors. As a direct result of the

defendants' reprehensible actions, the plaintiff has experienced significant emotional distress, including, but not limited to, anxiety, depression, insomnia, and recurring nightmares and loss of appetite.

23.    Mr. Reeves once led a life that many would consider ordinary yet fulfilling. He was the owner of a small used car business and enjoyed the freedoms that come with running such an enterprise. Life was predictable and provided a level of comfort that met his expectations. He relished in moments of solitude, free to move as he wished without interruption or scrutiny. Such normalcy has now been replaced by an existence fraught with anxiety and discomfort. The stark change became more noticeable when prolonging gazes from strangers became a part of his daily routine. Every time he steps outside his house, he is met with curious onlookers staring intently, as though he is an oddity on display. As a direct result of these extreme and outrageous conducts, plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

24.    Vehicles now seem to have a never-ending reason to blow their horns, each sounding, lasting longer, echoing through his mind and into the crevices of his private life. These disturbances are more than mere annoyances; they have become a relentless disruption of his peace, constructing invisible walls around him that deny him the liberty he once knew. Mr. Reeves attributes his current state of emotional unrest, mental health disorders, and depression to the actions of the defendants. These individuals or entities, despite having knowledge of the potential emotional and psychological impact of their conduct, chose to act without consideration for the repercussions of their actions. Ignoring the evident risks of harm, they allowed these circumstances to unfold, causing irreparable damage to Mr. Reeves's mental well-being. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

25.    Plaintiff writes from a place of profound distress, struggling with a reality that has been shaped by the actions and negligence of the defendants. The events that have unfolded have left me in a state where remembering anything unless it's written down is almost impossible. This constant forgetfulness is not just an inconvenience; it's a lingering cloud over my daily activities. This memory issue is coupled with a serious form of depression, a mental health ailment that he has been plunged into by the actions of the defendants through unknown means. These events have had

an extensive impact on my life. They have not only infringed upon my mental well-being but have also caused severe and permanent injuries to my ears and eyes. He endures severe mental and

physical pain and suffering every day, leading to a devastating loss of liberty. He is wrongfully imprisoned in his own home, having been for over 750 days now, unable to pursue regular activities or maintain my previous lifestyle. My earnings have dwindled to nothing, leaving me in a precarious financial situation that exacerbates my emotional turmoil. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

26.        Over the past year, the plaintiff has experienced an overwhelming number of encounters with drones or helicopters, totaling in the thousands. These encounters have not been without consequence. He has sustained injuries directly linked to these unsettling incidents, injuries that would not have occurred if not for the negligent actions of those responsible. Specifically, his ears and eyes have suffered severe and permanent damage, accompanied by persistent mental and physical pain. Beyond these physical injuries, the emotional and psychological toll has been enormous. His personal and professional life has been severely disrupted, resulting in wrongful imprisonment in my own home for a staggering 450 days and counting. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

27.        The impact on the plaintiff's emotional wellbeing is immeasurable, and the financial burden due to loss of earnings has been significant. The actions of those operating these drones and helicopters have been egregious and outrageous. It is evident that there is a blatant disregard for personal safety and privacy, and these operators have shown an intent to cause emotional distress or, at the very least, acted with reckless disregard for the consequences of their actions. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

28.        For two years, Mr. Reeves has endured continuous psychological manipulation from a group of individuals dedicated to monitoring his every action, damaging his belongings, and verbally assaulting him. Their harassment has resulted in the loss of more than ten vehicles, highlighting the severity of their destructive behavior. Furthermore, they have taken measures to disturb his sleep by shining bright lights through his bedroom window at night, demonstrating extreme cruelty. Whenever he ventures outside, he is confronted with the taunts and hostile shouts of strangers, which compromises his sense of safety and further limits my freedom.

29.        This ceaseless intimidation has profoundly impacted my life, stripping away my sense of security and peace of mind. The joy I once derived from life has been stolen, replaced by constant dread and discomfort. As someone who has endured years of trials to gain lawful immigration status in 2019, this was supposed to be the dawn of my American dream. Instead, it has become a nightmare as the perpetrators leave my possessions in ruins, laughing off my suffering in the process. The actions of these individuals have resulted in intentional and negligent infliction of emotional distress, exacerbating my PTSD, a condition he continues to battle each day. This persistent psychological abuse cannot continue without consequence. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including but not limited to, extreme anxiety, depression, insomnia, and nightmares.

## JURISDICTION AND
## VENUE

30.    This Court has subject matter jurisdiction of this action pursuant to 28

U.S.C. §1331, because it arises under the laws of the United States.

31.    This Court has jurisdiction over plaintiff's FTCA claims pursuant to 28 U.S.C. §§
1346(b), 2675 as Plaintiff submitted a Standard Form 95 claim to U.S Immigration and
Customs Enforcement ("ICE") on June 18, 2023, seeking damages of $25 million dollars.
Defendants denied Plaintiff's claim pursuant to 28 U.S.C. §2401(b) by virtue of the expiration
of the 6-month statute.

32.    Venue is prior in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2)

and 1391(e)(1)(B) because a substantial part of the events and omissions giving rise to

Plaintiffs claims occurred in this district.

33.    Finally, venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e)(1)(C)
because Plaintiff resides in the district and the defendants have offices in the district.

## PARTIES

34.    In a severe miscarriage of justice, Mr. Reeves found out in 2021 that he had
been wrongfully added to the terrorist watch list, resulting in intense and unwarranted
surveillance. For two harrowing years, Michael has endured the constant surveillance of
drones hovering above his home, denying him the peace, privacy, and security every
individual deserves. This relentless surveillance has not only confined him to his home but
has also left him feeling hopeless and trapped.

35.    The emotional and physical toll of being monitored around the

clock has been devastating. Michael's mental capacities have profoundly decreased.

Once capable and full of life, he is now beset by memory and cognitive issues that have

made daily life a struggle. The constant hover and noise of drones disrupt his ability to

focus, and more disturbingly, have robbed him of the ability to have a restful night's

sleep.

37.    Under such continuous stress and invasion of privacy, Michael's quality of life has deteriorated. There is a pressing need to restore his freedom and peace of mind by removing him from this malicious listing.

38.    The excessive noise from drones is a nuisance, interfering with the right to quiet enjoyment of property.

39.    For months, the plaintiff's life has been turned upside down by incessant noise pollution from drones flying above him and his home all night every night. The droning engines create a hostile environment, interrupting any hope of peace within his own home, a place that should serve as a sanctuary from the chaos of the outside world.

40.    These flights occur at unreasonably low altitudes, unnecessarily near my home, and present a continuous roar that invades my personal space. This consistent disturbance is not just irritating—it's a severe invasion of my personal rights, intruding upon my mental peace, and impacting my well-being. I believe this situation is not merely a nuisance, but a deliberate act of disregard from the drone operators, who seem to prioritize their convenience over the tranquility of residents.

41.      The repetitive revving of the drones echoes a premeditated intent to cause emotional distress. This isn't an isolated incident but a continuous and avoidable disturbance. The operators have a responsibility to operate these aircraft safely and respectfully, honoring what should be a standard contract between pilots and their communities. Such disregard constitutes not only negligence but an intentional infliction of emotional distress, infringing upon my right to live peacefully in my own home.

42.      For months, Mr. Reeves has been subjected to an intolerable invasion of privacy, which has led to serious emotional distress. Each day, leaving home should be a simple, mundane activity, yet it has transformed into a period of anxiety and foreboding. A gang of individuals conducting surveillance consistently follows him, photographs his every move, hurls insults, and engages in relentless harassment. These actions were not spontaneous, but clearly premeditated to inflict severe emotional distress upon me, effectively robbing me of my peace of mind and ability to lead a normal life.

43.      This relentless behavior disrupts not only Reeves' privacy but also violates the basic rights any individual should be entitled to. The property that once symbolized safety and personal comfort is now subjected to vandalism and malicious comments. Mr. Reeves' days are filled with unease, knowing that his every step is under scrutiny, and his mental well-being is consistently being attacked. It has become impossible to function normally under these oppressive conditions.

44.      The effects of this constant surveillance are not isolated to just his mental state; it has deeply impacted his personal relationships and day-to-day functionality. No person should have to live under such hostile surveillance that strips them of their humanity and

dignity. The weight of constantly being watched, belittled, and terrorized is more than a single person should bear.

45.        Imagine living each day under the suffocating pressure of invasive surveillance, to the point where even a simple trip to the store means being followed, photographed, and subjected to verbal abuse. This isn't just a story—this is the harsh reality for many facing excessive surveillance in their daily lives. One individual has been pushed to the brink of despair, spending countless nights consumed by tears, reaching out to thousands, and even contacting the White House and the Pentagon for assistance—desperate for a glimpse of hope in returning to a normal life.

46.        This isn't the America we know, a land that once cherished human rights and freedoms. The oppressive atmosphere created by unrelenting surveillance destroys lives, dreams, and hopes, leaving individuals feeling trapped in a hostile society. Constant harassment robs us of our peace, stripping away the very essence of what it means to live freely.

47.        Due to his wrongful imprisonment, unusual detention caused by excessive surveillance that took away his freedom leaving i him in detention at home,  Plaintiff has been deprived of the ability to seek further definitive medical, surgical and therapeutic care for his severe emotional distress which has caused persistent depressive symptoms, loss of enjoyment of life, and severe pain in right thumb, decreased range of motion, stiffness, weakness, and permanent disability to his right dominant thump.

48.      Defendants are liable for injuries inflicted by investigative or law enforcement personnel due to wrongful arrest, false imprisonment, emotional distress, personal injury, and/or negligent actions or omissions by the defendant's agents operating within the scope of their employment and for the benefit of their employer, as per the laws of the state where the incident took place.

49.      In this case, DEFENDANTS acted tortuously when they caused plaintiff to be wrongful, used excessive and unlawful surveillance inflicting severe and permanent injuries, and detained plaintiff at home.  The men that are following the plaintiff are agents,  are investigative, or law enforcement officers as defined by 28 U.S.C.  §§ 2680(h) and they surveillant him under the color of law.

50.      In this case, DEFENDANTS acted tortuously when they caused plaintiff to be wrongfully added to the neighborhood policing watch list and caused a group of men from the neighborhood  to begin harassing him, surveillance of him, photographing him and assaulting him.  The local men that are following the plaintiff from the neighborhood are legally agents working for law enforcement, conducting these tortious abuses and abusive acts. They  are investigators, or law enforcement officers as defined by 28 U.S.C.  §§ 2680(h) and defendants are responsible for acts.

51.      In this case, DEFENDANTS acted tortuously when they caused plaintiff to be wrongfully added to the terrorist watch list, presumably in order to conduct a tortious program against him and to torture him.  The men that conducted these acts are agents,  are investigative, or law enforcement officers as defined by 28 U.S.C.  §§ 2680(h) and they surveillant him under the color of law.

53.      In this case, DEFENDANTS acted tortuously when they caused plaintiff to be subjected to destructive sounds from their aircraft and used excessive and unlawful surveillance techniques inflicting severe and permanent injuries from the skies.  The men that

conducted aerial surveillance of the plaintiff are agents, are investigative, or law enforcement officers as defined by 28 U.S.C. §§ 2680(h) and they surveillant him under the color of law.

## FACTUAL ALLEGATIONS

54.    This complaint is a spin off that arises from the tortious actions taken by the Immigration and Customs Enforcement ("ICE") when at least six (6) unidentified plain-clothed ICE agents unlawfully arrested the Plaintiff on June 25, 2018, at approximately 10:00 a.m. outside his home in the Bronx, New York. Mr. Reeves suffered a broken right shoulder and had two surgeries.

55.    On August 13, 2019, Mr. Reeves won legal immigration status at the immigration court at 201 Varick Street in New York City. He was granted immigration status by Immigration Judge Mimi Tsankov. Following his released from immigration detention, Reeves sued the Immigration and Customs Enforcement ("ICE") for his right shoulder injuries. After that, he was added to the terrorist watch list, presumably in retaliation.

56.    The investigating federal agents failed to reasonably investigate Mr. Reeves' case before issuing the order unlawfully adding him to the FISA watch list and prior to performing the unlawfully detaining him at home. Had defendants adequately investigated plaintiff's case, it would have reasonably realized that he had no connections to terrorism.

57.    As a direct result of his misplacement, on that list, he has been subjected to a list of civil rights violations and tortious actions by the defendants, thus leading to severe

emotional distress, Intentional infliction of emotional distress and Negligent Infliction of
emotional distress.

**Plaintiff' immigration History**

58.     Michael Reeves was born on June 4, 1970, in Liberia, Africa.  On April 26,

1986 Plaintiff lawfully entered the United States to live in the custody of his mother, a

U.S. citizen.

59.         Over 20 years before his June 25, 2018, arrest, the Department of Homeland
Security ("DHS") issued a prior order of removal on November 27, 1997, which stemmed
from a drug conviction that took place when Plaintiff was 18 years old.

60.         As a result of the prior removal order, Plaintiff was deported from the United
States back to Liberia on January 30, 1998. At that time Liberia was amid a violent civil-
war, which led to the rise of Liberian President Charles Taylor, a ruthless military dictator
infamously linked to the African "blood diamond" trade in Sierra Leone,

        Netherlands for his war crimes and human  rights atrocities.

61.     On or about July 1998 Mr. Reeves fled Liberia and reentered the United States seeking asylum due to a significant fear for his life if he remained in Liberia.   At this time Plaintiff's sister, Agnes Taylor, had becomes romantically involved with, and ultimately married, then-dictator Charles Taylor, and Plaintiff's family member, C. Reeves, had become deeply involved in the "blood diamond" trade as a diamond smuggler for the Liberian Dictator.   Due to his close family ties to then-dictator Charles Taylor, Plaintiff, fearing for his life, made the decision to escape Liberia and his family's close ties to the blood diamond trade and ongoing criminal enterprise.   Instead of acquiescing to then• President Taylor's demands, Mr. Reeves, at only 26 years old, chose to flee Liberia knowing that if he ever returned he would be tortured or murdered by the Taylor Regime.

62.     From 1998 through 2014 Plaintiff lived and worked in the United States. In 2014 Plaintiff came into contact with immigration  authorities and was arrested and charged with illegal reentry, which was dismissed by the District Court for the Eastern District of New York.

63.     As a result of his 2014 arrest, DHS attempted to reinstate Mr. Reeve's prior order of removal, which was denied.   The denial was based on Mr. Reeves' fear of being returned to Liberia, given his close family ties to Charles Taylor.   Plaintiff was interviewed  by an asylum officer who found the threat of death and/or torture was legitimate and entirely reasonable, and Plaintiff was placed in withholding-only proceedings, thus making Plaintiff's prior final removal order no longer final.   Under New York law at that time, a prior final removal order is no longer final when an immigrant is placed into removal proceedings.(Shanahan,  831 F. 3d [2d Cir. 2016]).

64.    On July 21, 2016, Mr. Reeves had a Master Calendar hearing before Immigration Justice Vivienne Gordon-Uruakpa,  which he was unable to attend due to a medical emergency stemming from a prior failed hernia surgery.  *As* a result, Mr. Reeves' immigration case was administratively closed indefinitely by Immigration Justice Vivienne Gordon-Uruakpa.

65.    Due to the administrator closure of his case, which is not the same as termination, Mr. Reeves remained in immigration proceedings and his prior order of removal was never reinstated.

.    After Mr. Reeves's wrongful arrest on June 25, 2018, his immigration

attorney, Miriam D. Lacroix, Esq. filed a motion to re-calendar.   Justice  Gordon-Uruakpa ruled against DHS in that proceeding and returned the case to active docket and held that Mr. Reeves  "is *prima facie* eligible for Deferral of Removal under the UN Convention Against Torture pursuant to 8 CFR §208.17"  due to the fact that Plaintiff "is more likely than not to be tortured or killed if he is returned to Liberia" (see Motion to Recalendar Order of Justice Gordon-Uruakpa).  In sum, ICE agents mistook the administrative closure of Mr. Reeves' case for a termination, and they acted upon that mistaken notion when they engaged in Plaintiff's wrongful arrest on June 25, 2018.   On August 13, 2019, Immigration Justice Mimi Tasnkov granted Plaintiff a deferral of removal under the Convention Against Torture, further supporting the impropriety of his arrest.

CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF Against ALL DEFENDANTS**
(FTCA Claim of Emotional Distress)

67.    Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth herein.

68.    This claim is brought pursuant  to 28 U.S.C.  §§ 2671 *et seq.*

**SECOND CLAIM FOR RELIEF Against ALL DEFENDANTS**
(FTCA Claim of property damage, Negligent Hiring, Training and Supervision)

69. Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth herein.

70.    This claim is brought pursuant to 28 U.S.C.  §§ 2671 *et seq.*

**THIRD CLAIM FOR RELIEF Against ALL DEFENDANTS**
(FTCA Claim of Emotional Distress-ILLEGAL PLACEMENT ON COMMUNITY WATCHLIST)

80.  Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth herein.

81.    This claim is brought pursuant  to 28 U.S.C.  §§ 2671 *et seq.*

**FOURTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(FTCA Claim of Emotional Distress-Negligent Hiring of dangerous community members to as

agents and to conduct surveillance, follow and photograph the plaintiff)


82.    Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth

herein.

83.    This claim is brought pursuant to 28 U.S.C.  §§ 2671 *et seq.*




**FIFTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(FTCA Claim of Emotional Distress-ILLEGAL PLACEMENT ON FISA TERRORIST WATCH

LIST)

84.    Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth

herein.

85.    This claim is brought pursuant  to 28 U.S.C.  §§ 2671 *et seq.*




**SIXTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(Fourth Amendment Claim of Unlawful Detention / Privacy Violation)

86.     Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth

herein.

87.    This claim is brought pursuant to 28 U.S.C.  §§ 2671 *et seq.*

**SEVENTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(Torture, violation of the Eighth Amendment to the U.S. Constitution)

88.    Plaintiff realleges and reincorporates  each and every allegation  above as if fully set forth

herein.

89.     This claim is brought pursuant to 28 U.S.C.   §§ 2671 *et seq.*

**EIGHT CLAIM FOR RELIEF Against ALL DEFENDANTS**
(Negligent Infliction of Emotional Distress)

90. Plaintiff realleges and reincorporates  each and every allegation above as if fully set forth herein.

91.     This claim is brought pursuant to 28 U.S.C.   §§ 2671 *et seq.*

**NINTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(Intentional Infliction of Emotional Distress)

92.     Plaintiff realleges and reincorporates  each and every allegation above as if fully set forth

herein.

93.     This claim is brought pursuant to 28 U.S.C.   §§ 2671 *et seq.*

**TENTH CLAIM FOR RELIEF Against ALL DEFENDANTS**
(Business loss, property destruction, Harassment, Assault, Emotional Distress, Conspiracy to harass,

Conspiracy to destroy business operation, Criminal conspiracy to commit bodily harm, Conspiracy to

torture, conspiracy to kill, assault by an  unknown gaseous substance, spraying air on plaintiff from

drones, endangerment, Negligent Operation of drones and aircraft. Nuisance and Excessive Noise,

warrantless searches and seizures, intimidation, retaliation and VERBAL ABUSE)

94.        Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

95.        This claim is brought pursuant to 28 U.S.C.  §§ 2671 *et seq.*

**PRAYER FOR** RELIEF

WHEREFORE, Plaintiff, Michael Reeves, does hereby pray that judgment be entered in his favor and against the Defendant as follows:

1)      Medical expenses, lost wages, pain and suffering, mental and emotional distress, future impairment, loss of earnings and loss of enjoyment of life totaling TWENTY - MILLION ($20,000,000.00)  DOLLARS; and

2)      Costs and attorneys fees incurred in this civil action, together with such further and additional relief at law or in equity as this Court may deem proper.

Respectfully Submitted

Michael Reeves

DATE:                                                                            May 13, 2025